# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

UNITED FINANCIAL
CASUALTY COMPANY,

                Plaintiff,

v.                                  CIVIL ACTION NO. 3:17-2002

MILTON HARDWARE, LLC,
BUILDERS DISCOUNT, LLC,
RODNEY PERRY, and
GREG ALLEN BALL,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court is Plaintiff United Financial Casualty Company ("United")'s Motion for Summary Judgment, ECF No. 25; Defendant Greg Allen Ball ("Ball")'s Cross-Motion for Summary Judgment, ECF No. 28; and Defendant Rodney Perry ("Perry")'s Motion for Summary Judgment, ECF No. 40. Defendants Milton Hardware, LLC ("Milton Hardware") and Builders Discount, LLC ("Builders Discount") failed to answer United's Complaint and are therefore in default at this time. ECF No. 22. For the reasons set forth herein, United's Motion is **GRANTED**, Ball's Motion is **DENIED**, and Perry's Motion is **DENIED**. The judgment of this Court shall additionally be binding upon defaulting Defendants Milton Hardware and Builders Discount.

    **I.**    **Background**

The facts underlying this action are not in dispute. The conduct at issue in this case occurred on October 25, 2016. ECF No. 26, at 1; ECF No. 29, at 1; ECF No. 41, at 1. At that time, Ball was

employed by Milton Hardware and, pursuant to that employment, was performing work on Perry's property. *Id*. Perry was a Milton Hardware customer. *Id*. During the course of the work on Perry's property, someone needed to move a Milton Hardware company truck. *Id*. The owner of Milton Hardware, who was also working on site, gave Perry permission to move the Milton Hardware truck out of the way. ECF No. 26, at 2; ECF No. 29, at 2; ECF No. 41, at 2. With that permission, Perry proceeded to move the Milton Hardware truck and, in doing so, struck Ball with the truck, causing severe injuries. *Id*. At the time Ball was struck and injured, Milton Hardware had defaulted on its workers' compensation premiums. *Id*. Despite having defaulted on its workers' compensation premiums, however, Milton Hardware had a commercial auto policy with United at the time of Ball's injuries. *Id*.

United, Ball, and Perry now ask this Court to determine the rights and liabilities of the parties. United asks the Court to declare that it owes no coverage for Ball's injuries, ECF No. 26, at 20, while Ball and Perry request that the Court declare that United owes Ball coverage for his injuries, ECF No. 29, at 20; ECF No. 41, at 8.

**II.     Standard of Review**

While United now seeks summary judgment against all defendants, ECF No. 25, the Court notes that Defendants Milton Hardware and Builders Discount are currently in default. As such, the Court's authority to enter judgment against Milton Hardware and Builders Discount is properly characterized as the power to enter default judgment. Defendants Ball and Perry, however, have responded to United's Complaint and participated actively in this case. The Court's authority to enter judgment as to these defendants, then, is properly characterized as the power to enter summary judgment. These respective powers are discussed below.

### a. Default Judgment

Default judgment may be entered against a defendant when that defendant fails "to plead or otherwise defend" his or her case. Fed. R. Civ. P. 55. "[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments. . ." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Default judgment may be granted even in declaratory judgment actions. *See American Select Ins. Co. v. Taylor*, 445 F.Supp.2d 681 (N.D.W.Va. 2006).

### b. Summary Judgment

Summary judgment, on the other hand, may be entered when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment may not be granted where the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment should be granted, however, when, drawing all inferences in a light most favorable to the non-movant, "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

## III. Insurance Policy

At the time of Ball's injuries, Milton Hardware had defaulted on its workers' compensation premiums. ECF No. 26, at 2; ECF No. 29, at 2; ECF No. 41, at 2. At the same time, however, Milton Hardware held an active commercial auto insurance policy with United. *Id*. United issued the relevant policy (Commercial Auto Insurance Policy Number 02964608-0) to Milton Hardware and Builders Discount for the period April 7, 2016 to April 7, 2017. ECF No. 25-2. The policy provides liability coverage to others for bodily injury and property damage up to $1,000,000; legal

liability coverage to others for bodily injury and property damage up to $1,000,000; and medical payments in the amount of $5,000 for each person. *Id.*

There are several exclusions listed in the policy, however. *See* ECF No. 25-2. First, the policy includes a workers' compensation exclusion. The policy states, "[Liability coverage], including our duty to defend, does not apply to . . . [a]ny obligation for which an insured. . . may be held liable under workers' compensation . . . law . . ." *Id*. The policy goes on to state that liability coverage does not apply to "[a]n employee of any insured" where that employee's injuries "aris[e] out of or within the course of [t]hat employee's employment by [the] insured. . ." *Id*. The policy also includes a limit of liability for uninsured motorists, noting that "the amount of damages that an insured is entitled to recover . . . shall be reduced by all sums . . . that should apply, because of bodily injury under . . . workers' compensation law . . ." *Id*.

It is a well-settled principle of West Virginia law that courts should "apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason." *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 900 (W. Va. 2009). A court may only find ambiguity within the contract where the language is "reasonably susceptible of two different meanings" or it is "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *Id*. (internal citation and quotation omitted). "[T]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination . . ." *Dairyland Ins. Co. v. Fox*, 550 S.E.2d 388, 391 (W. Va. 2001) (internal citation and quotation omitted). Therefore, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Id*. (internal citation and quotation omitted).

The Court finds that there is no dispute of material fact at issue in this case. As such, the parties are entitled to a determination of their rights and liabilities pursuant to the United insurance policy by way of an order of summary judgment.

## IV. Liability Coverage

The Court will first consider the parties' arguments as they relate to Ball's entitlement to coverage pursuant to the United policy's liability coverage provisions.

### a. Workers' Compensation Exclusion

Ball concedes that he was an employee of Milton Hardware at the time of his injuries and that he sustained his injuries while acting within the scope of that employment. ECF No. 29, at 1. Generally, claims brought by an employee against his employer for injuries he sustained within the scope of his employment fall under workers' compensation laws. *See Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 553 S.E.2d 257, 261 (W. Va. 2001). "Workers' compensation coverage is designed to release both an employer and its employees from common-law rules of liability and damage, protect an employer from expensive and unpredictable litigation, and provide compensation for injuries to employees without the burdensome requirements of proving common-law negligence." *Id*.

In West Virginia, "all persons, firms, associations and corporations regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in [West Virginia] . . . are required to subscribe to and pay premium taxes into the Workers' Compensation Fund for the protection of their employees . . ." W. Va. Code § 23-2-1(a) (2016). It is undisputed that Milton Hardware, Ball's employer, was required to maintain workers' compensation insurance. It is also undisputed that, at the time of Ball's injuries, Milton Hardware

had defaulted on its workers' compensation premiums and therefore did not have the requisite coverage.

West Virginia's workers' compensation statute provides that any employer who does not maintain workers' compensation coverage as required by the statute "shall be liable to [its] employees . . . for all damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer or any of the employer's officers, agents or employees while acting within the scope of their employment and in the course of their employment . . ." W. Va. Code § 23-2-8 (2016). Again, it is undisputed that Ball sustained his injuries while he was working within the course of his employment with Milton Hardware.

The West Virginia Supreme Court considered the case of an employer that had defaulted on its workers' compensation premiums at the time of an employee's injury in *Erie Insurance Property and Casualty Co. v. Stage Show Pizza, JTS, Inc.* 553 S.E.2d 257 (W. Va. 2013). In that case, the court found that "[a] negligence cause of action against an employer by an employee injured in the course of and as a result of his employment, that is not barred by the immunity provisions of [the West Virginia Workers' Compensation Act] because of the employer's default on its workers' compensation obligations . . . , is not an obligation of an employer under a workers' compensation law for purposes of interpreting an insurance policy." *Id.*, at 265.

Ball and Perry now argue that this language precludes this Court from finding that Ball's claims against Perry arise under West Virginia's workers' compensation law. There is a notable difference, however, between the *Stage Show Pizza* case and the case now before the Court. While the policy in *Stage Show Pizza* included a workers' compensation exclusion similar to the one in the United policy here at issue, the policy in *Stage Show Pizza* was a general liability insurance

policy that also included Stop Gap Coverage. *Id*., at 260. The relevant language provided that Erie would pay for "damages because of bodily injury to [Stage Show] employees for which the law [held] [Stage Show] responsible and recovery [was] permitted by law." *Id*.

The West Virginia Supreme Court took great care to identify and explain the parameters of the Erie policy's stop gap provision. *Id*. at 262. The court noted that such coverage "is intended to serve as a gap-filler, providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provision of the workers' compensation statute or the employee is not subject to the workers' compensation law." *Id*. (internal citation and quotation omitted).

After this examination, the court found that the insurance company in that case could not escape liability under the terms of its stop gap coverage pursuant to the policy's workers' compensation exclusion. *Id*., at 265. The court ruled that the injured worker's claims more appropriately fell under the provision for stop gap coverage than they did under the exclusion for workers' compensation and that, as such, the insurance company was liable for the employee's injuries. *Stage Show Pizza*, 553 S.E.2d at 265. This Court finds that the Supreme Court's ruling in *Stage Show Pizza* clarified that an insurance company which issues stop gap coverage to an employer cannot escape liability under that stop gap coverage provision simply by including a workers' compensation exclusion elsewhere in the policy.

In this case, however, the relevant insurance policy is a commercial auto insurance policy. *See* ECF No. 25-2. There are no provisions for general commercial insurance within the policy, nor is there any language that provides for stop gap coverage. *See id*. The policy includes a clear and unambiguous exclusion that exempts from coverage "any obligation for which an insured . . . may be held liable under workers' compensation . . . law." ECF No. 25-2. Accordingly, the Court

finds that Ball's injuries fall properly within this exclusion and that, as a result, he is barred from liability coverage under the policy.

### b. Motor Vehicle Policy Statutory Requirements

Next, the Court considers Ball's argument that he is entitled to relief under West Virginia's statutorily prescribed omnibus coverage requirements. In West Virginia, no insurance policy "covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued . . . unless it contains a provision insuring the named insured and any other person . . . responsible for the use of or using the motor vehicle with the consent . . . of the named insured . . . against liability for [damages] as a result of negligence in the operation or use of such vehicle by the named insured or by such person . . ." W. Va. Code § 33-6-31(a). This requirement does not apply, however, "to any policy of insurance to the extent that it covers the liability of an employer to his or her employees under any workers' compensation law." W. Va. Code § 33-6-31(h).

Ball argues that he is entitled to coverage under the policy because his claim is against Perry, not against policy holders Milton Hardware or Builders Discount and that, as such, the workers' compensation exception to the requirement does not apply. ECF No. 29, at 6. For United to be found liable for the actions of Perry, however, that coverage would have to be found within the confines of the policy United issued to Milton Hardware. The Supreme Court of Kentucky examined a similar case of derivative liability in the context of a household exclusion within an insurance policy. *See Liberty Mut. Ins. Co. v. State Farm Auto. Ins. Co.*, 522 S.W.2d 184, 185 (Ky. 1975). In that case, the court found that "[t]o permit coverage for [an] additional insured whose liability is derivative . . . would defeat the purpose of the exclusion." *Id.*, at 186. The court further held that "it is not reasonable to afford greater coverage to an additional insured under the omnibus

clause, who has paid no premium for the coverage, than to the named insured who did pay the premium for the policy." *Id*.

In this case, the insurance policy holder, Milton Hardware, would not be entitled to coverage in the event that Ball had sued Milton Hardware for his injuries. The relevant statute clearly sets forth that the omnibus requirements "do not apply to any policy of insurance to the extent that it covers the liability of an employer to his or her employees under any workers' compensation law." W. Va. Code § 33-6-31(h) (2016). As the Kentucky Supreme Court found, it would be unreasonable for this Court to now give Perry greater coverage under the United insurance policy than it would have given Milton Hardware had Ball brought his claims directly against his employer. Accordingly, the Court does not find that United owes a duty of liability coverage pursuant to the statutory omnibus requirement.

### c. Employee Indemnification and Employer's Liability Exclusion

Because the Court finds that Ball is barred from liability coverage pursuant to the workers' compensation exclusion in the United policy, the Court does not reach Ball's arguments regarding the policy's employee indemnification and employer's liability exclusion at this time.

### V. Uninsured Motorist Coverage

Ball further contends that he is entitled to coverage pursuant to the United policy's Uninsured Motorist (UIM) Coverage provisions. ECF No. 9. The policy, however, includes the following exclusion under this section: "[T]he amount of damages that an insured is entitled to recover under [the UIM coverage endorsement] shall be reduced by all sums . . . paid, payable, or that should apply, because of bodily injury under . . . workers' compensation law . . ." ECF No. 25-2. As previously discussed, the Court has found that Ball's injuries do fall within the scope of workers' compensation coverage. Accordingly, this exclusion bars UIM coverage in this case.

## VI. Medical Payments Coverage

The Court finally finds no merit to Ball's argument that he is entitled to medical payments coverage under the policy. As discussed above, the Court finds that workers' compensation law applies to Ball's injuries. The policy Ball seeks to have applied to those injuries specifically states that medical payments coverage "does not apply to bodily injury . . . occurring during the course of employment if workers' compensation coverage should apply . . ." ECF No. 25-2. This exclusion is enforceable and, as Ball incurred his injuries during the course of his employment, he cannot now seek coverage from United for those injuries.

## VII. Conclusion

As specified, the Court finds that United owes no duty of coverage in the present matter and **GRANTS** United's Motion for Summary Judgment, ECF No. 25, as against all named defendants. This ruling is made pursuant to Rule 56 as to defendants Ball and Perry and pursuant to Rule 55 as to defaulting defendants Milton Hardware and Builders Discount. Accordingly, the Court also **DENIES** Ball's Cross-Motion for Summary Judgment, ECF No. 28, and Perry's Motion for Summary Judgment, ECF No. 40. Accordingly, Ball's claims against United are **DISMISSED**.

With the dismissal of these claims, the Court notes that the only remaining claim in this case is a common law negligence claim which Ball has asserted against Perry. It is well-recognized that the "district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 552 (2005) (internal citation and quotation omitted). For a district court to properly exercise jurisdiction over a given matter, one of two conditions must be met: (1) the case at issue must present a federal question, i.e. the case must "arise under the Constitution, laws, or

treaties of the United States"; or (2) the case must be between citizens of different states and involve a matter in controversy over $75,000. *Id*. (internal citation and quotation omitted).

Ball's claim against Perry is rooted in common law negligence and therefore does not "arise under the Constitution, laws, or treaties of the United States." Additionally, Ball and Perry have admitted that they are both residents of Milton, West Virginia. ECF Nos. 9, 37. As such, there is no diversity of citizenship among these parties. While this claim was previously properly before this Court pursuant to the Court's power to exercise supplemental jurisdiction, United and its claims are no longer involved in this case. Accordingly, the Court **FINDS** that it does not have jurisdiction as to Ball's claim against Perry. Ball's remaining claim against Perry is therefore also **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 14, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE